# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

DION D. GIBBS; and attached Plaintiffs, on behalf of themselves

and all other similarly situated S.C.I. inmates

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

**\*Class Action\***

-against-

**JOHN CARNEY**, Governor of State of Delaware;

**CLAIRE DeMATTEIS** Commissioner of DOC;

**TRUMAN MEARS**, SCI Warden; and

**DEPARTMENT OF CORRECTIONS**

*(In the space above enter the full name(s) of the defendant(s). In you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section IV. Do not include addresses here.)*

Civ. Action No. **2 0 - 1 3 0 1**
(To be assigned by Clerk's Office)
**COMPLAINT**

(*Pro Se* Prisoner)

Jury Demand?

☑ Yes

☐ No

---

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.**



FILED

℣ SEP 28 2020

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## I.   COMPLAINT

*Indicate below the federal legal basis for your claim, if known. This form is designed primarily for pro se prisoners challenging the constitutionality of their conditions of confinement, claims which are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "Bivens" action (against defendants).*

Check one:

☑   42 U.S.C. § 1983 (state, county, or municipal defendants)

☐   Action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971)

## II.   PLAINTIFF INFORMATION

| | |
|---|---|
| Gibbs, Dion, D | (See attached Plaintiffs) |
| Name (Last, First, MI) | Aliases |

S.B.I. #00414364
Prisoner ID #

Sussex Correctional Institution
Place of Detention

P.O. Box 500
Institutional Address

| | | |
|---|---|---|
| Sussex, Georgetown | DE | 19947 |
| County, City | State | Zip Code |

## III.   PRISONER STATUS

*Indicate whether you are a prisoner or other confined person as follows:*

☐   Pretrial detainee

☐   Civilly committed detainee

☐   Immigration detainee

☑   Convicted and sentenced state prisoner

☐   Convicted and sentenced federal prisoner

CONTINUED

#00245387
Andre L. Jackson
Andre L. Jackson

Justin Erskine
Justin Erskine
#00414890

Gary Klaff
Gary Klaff #00446721

Drew Smith
Dru Smith #00289797

William Brocklehurst
William Brocklehurst #00180809

Anthony Woods
Anthony Woods #00301308

Roderick Brown
Roderick Brown #00315954

James Stansbury
James Stansbury #00232601

Mack Taylor
Mack Taylor #00268235

Nirangan Riker
Nirangan Riker #00468265

Matthew Starr
Matthew Starr #00525033

Matthew Hoskins
Matthew Hoskins #00650467

Tyrone Baxter
Tyrone Baxter #00183724

Jesse Dudley
Jesse Dudley #00514753

William M McKinney
William McKinney #00161349

Wayne Thompson
Wayne Thompson #00183391

Philip Brewer
Philip Brewer #00373719

Derek Stone
Derek K Stone #00303183

Joseph LeVan
Joseph LeVan #00371203

Lateef Dickerson
Lateef Dickerson #00373322

Nathan Yates
Nathan Yates #00333175

George W Bradford Jr
George Bradford #00201852

Areon Gibbs
Areon Gibbs
#00370559

Jeffrey Scott
Jeffrey Scott
#00196702

Antonio Serpa
Antonio Serpa
#00318895

Joshua Dutton
Joshua Dutton
#00652060

Darrell Bivens
Darrell A. Bivens #00199818

James Henson
James Henson
#00116541

Joseph Parker
Joseph Parker #00591200

Alan E. Dorman
Alan E. Dorman
#00799191

Eric Howell
Eric Howell #276662

Jeff E. Paddock
Jeff E. Paddock
#00248273

Tyrone Adkins
Tyrone Adkins
#

PLAINTIFFS

Hasini Perkins #00295136

Brandon Beene #60259156

Adam Longacre 00736684

Alex D Justice #00211927

Keith Czajka #00560397

Shane DeShields #00317251

Jeremy Jones #00404991

Trevion Brown #00528690

Michael Van Vliet 00628981

George A. Jackson #00171250

Jason Lineweaver #00621418

Cortez Harmon, T #00491195

John Franklin #00214419

Shamar Walker #00771788

Frederick Massey #00150624

Shelton Caldwell #00567446

Aleem Abdy-Wahhab #00313794

Donta Vickers #00283118

Raymire Briscoe #00754049

Omar Cameron #00853088

Korey Wyman #00309129

Tyrell Mackey #00293832

Jeffrey S. Sullivan #00216445

Charles H. Upshur #00150155

Leonardo Street #00278075

Jermane Vessels #00251955

Brian R. Melvin #00252319

Kregg Walton #00027863

Jonathan Stevens #00307636

Damiere Harris 00616978

Ryan Bradford #00645122

David B. Dolan #00618418

Charles E. Boone #00185426

Jermaine Brinkley #00362066

(3)

## IV.   DEFENDANT(S) INFORMATION

*Please list the following information for each defendant. If the correct information is not provided, it could result in the delay or prevention of service. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.*

Defendant 1: Carney, John: sued in his individual and official capacities.
Name (Last, First)

Governor of State of Delaware
Current Job Title

Carvel State Building 820 North French Street
Current Work Address

New Castle, Wilmington          DE          19801
County, City          State          Zip Code


Defendant 2: DeMatteis, Claire: sued in her individual and official capacities.
Name (Last, First)

Commissioner of Department of Corrections
Current Job Title

245 McKee Road
Current Work Address

Kent, Dover,          DE          19904
County, City          State          Zip Code

**Defendant(s) Continued**

Defendant 3:   Mears, Truman: sued in his individual and official capacities.
              Name (Last, First)

              Warden at Sussex Correctional Institution
              Current Job Title

              Route 113, P.O. Box 500
              Current Work Address

              Sussex, Georgetown                    DE              19947
              County, City                          State           Zip Code


Defendant 4: Department of Correction
              Name (Last, First)

              Governmental entity
              Current Job Title

              245 McKee Road
              Current Work Address

              Kent, Dover,                          DE              19904
              County, City                          State           Zip Code

## V.    STATEMENT OF CLAIM

Place(s) of
Occurrence:   Sussex Correctional Institution, at Georgetown, Delaware

Date(s) of occurrence:  June of 2020 throughout July of 2020

State which of your federal constitutional or federal statutory rights have been violated:

Plaintiffs were subject to cruel and unusual punishment in violation of the Eighth Amendment to
the United States Constitution

*State here briefly the FACTS that support your case. Describe how each defendant was
personally involved in the alleged wrongful actions, state whether you are physically injured as
a result of those actions, and if so, state your injury and what medical attention was provided to
you.*

FACTS:                              OPERATIVE FACTS

1.   Plaintiffs bring this action as a class pursuant to Federal Rules of Civil Procedure 23, on
     behalf of themselves and all other SCI inmates who tested positive for COVID-19.

2.   COVID-19 is a disease caused by novel Coronavirus that began infecting humans in late
     2019. CARNEY, DeMATTEIS and MEARS knew there was a COVID-19 pandemic.

3.   To prevent infection and mitigate the spreads of the deadly virus, the Center for Disease
     Control ("CDC") and other public health agencies have universally prescribed social
     distancing – rigorous hand washing with soap and water – the use of alcohol based hand
     sanitizer, and wearing cloth face coverings where other social distancing are difficult to
     maintain.

4.   On March 27, 2020, the CDC issued guidance directed at institution facilities to combat
     the spread of COVID-19. ("CDC Guidance") See **Interim Guidance on Management of
     Coronavirus Disease 2019 (Covid-19) in Correctional and Detention Facilities, Ctrs.
     For Disease Control & Prevention (Mar. 27, 2020).
     https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-
     detention.pdf.** These guidelines formed the basis of this action.

5.   Medical experts agree that an urgent decrease in correctional facilities to allow for
     adequate social distancing is the best way to prevent the spread of COVID-19 infection
     among the staff and inmates, which is necessary to mitigate the spread of this infection
     within correctional facilities.

6.   And as the CDC has acknowledged, "[a]lthough social distancing is challenging to
     practice in correctional and detention environments, it is a cornerstone of reducing
     transmission of respiratory diseases such as COVID-19." (CDC Guidance, at 4).

7.   On April 2, 2020, CARNEY and DeMATTEIS witness and authorized inmates at the
     James T. Vaughn Correctional Center ("JTVCC"), sewing and making face masks for all
     DCC Correctional officers, first responders and DOC inmates.

8. Yet remarkably, on or about April 3, 2020, DeMATTEIS issued a directive or an order to DOC officials that inmates, including Plaintiffs and class members, would not be permitted to wear face masks or early release as a result of the COVID-19 pandemic.

9. CARNEY was made aware of DeMATTEIS' refusal to permit Plaintiffs and class members personal protective facemasks and her rejection to the reduction of the inmate population, including SCI, to conform to CDC's recommendation to combat the spread of COVID-19.

10. CARNEY would play politics with Plaintiffs and class members health and safety, by resisting calls to provide Plaintiffs and Class members protective facemasks and the release of a larger number of DOC inmates to adequately conform to social distancing.

11. Given the above, a spokesperson for CARNEY said, "Governor is confident the situation in prisons is being handle appropriately."

12. On April 29, 2020, Chris Coffey, Campaign Manager for Citizens for a Pro-Business Delaware ("CPBD") stated, CARNEY and DeMATTEIS "repeatedly declined CPBD's offer of free facemasks and hand sanitizer for each inmate in the entire Delaware Correctional system".

13. In May of 2020, 128 inmates at the James T. Vaughn Correctional Center ("JTVCC") tested positive in the first large-scale COVID-19 outbreak at a DOC facility. Sadly, seven (7) of the infected inmates would die.

14. Given the above, CARNEY and DeMATTEIS would **now** permit all ("JTVCC") inmates to wear personal protective facemask, quarantine JTVCC and monitor all inmates' movement to be controlled by social distancing recommendations by CDC.

15. In response to the COVID-19 outbreak at JTVCC, DeMATTEIS and MEARS refused to take any proactive measure at SCI, such as: permitting Plaintiffs and Class members to wear personal protective facemasks, quarantine the entire SCI, and monitor SCI inmates' movement to be controlled by social distancing recommendations to protect them from the exposure and spread of COVID-19.

16. Meanwhile, there was an extremely high rate of community spread of COVID-19 infection in Sussex County during the relevant time Plaintiffs and Class members were incarcerated at SCI. In fact, Sussex County was clearly known as the "hot spot" for COVID-19 infection in Delaware.

17. Given the above, DeMATTEIS and MEARS continued to not take any proactive measures at SCI, such as: permitting Plaintiffs to wear personal protective facemasks, quarantine the entire SCI, and monitor inmates' movement to be controlled by social distancing recommendations by CDC.

18. In June of 2020, an inmate arrived at SCI Pre-trial, and was identified as high risk when the intake process revealed that he had close contact with a COVID-19 patient in Sussex County.

19. This inmate would be immediately transferred from Pre-trial receiving room, across the prison compound to the un-quarantined infirmary at SCI Medical.

20. On June 29, 2020, a positive test result was received on this inmate that was housed at the un-quarantined infirmary area at SCI Medical, constituting a "hot spot" for the spread of the deadly COVID-19.

21.  Given the above, this same un-quarantined infirmary area is also used for inmate-diabetics to take their insulin medication four (4) times a day. (AM, Noon, Mid-Noon & PM). Also, there are inmate workers that carry out cleaning duties in this same area.

22.  These inmate-diabetics arrive to SCI infirmary ("hot spot") from various housing units. (Minimum, Medium, P.I., Program & Merit).

23.  Plaintiffs and Class members housing units consist of:
    a. Minimum / four – man cells. (No protective facemask and no social distance)
    b. Medium / dormitory – style. (No protective facemask and no social distance)
    c. P.I. / dormitory – style. (No protective facemask and no social distance)
    d. Program / dormitory – style. (No protective facemask and no social distance)
    e. Merit / Two – man cells. (No protective facemask and no social distance)

24.  SCI video monitoring confirms that inmate-diabetics arrive at SCI infirmary ("hot spot") with no personal protective facemasks and without controlled movement to conform to social distancing recommendations by CDC.

25.  After the unprotected inmates received their insulin medication, along with the inmate workers they would return to units their un-quarantined housing units listed at paragraph 23, without controlled social distancing and no protective facemasks.

26.  On the morning of July 1, 2020, a 70-year-old inmate-diabetic collapsed at the SCI infirmary ("hot spot") and was taken to an out-side area hospital, and subsequently tested positive for COVID-19.

27.  Later that afternoon, DeMATTEIS and MEARS would now permit Plaintiffs and Class members to wear personal protective facemasks, quarantine SCI and all inmates' movement to be controlled by social distancing recommendations by CDC.

28.  DeMATTEIS would authorize testing on all 973 SCI inmates for COVID-19, which revealed one-third (323) inmates testing positive for COVID-19. Sadly, five (5) of the 323 infected inmates died.

29.  Defendants were all aware that CDC had advised that a decrease in prison population density of housing units to allow for adequate social distancing, and or wearing face coverings where social distancing is difficult to maintain, are credited for the prevention of COVID-19 infection.

30.  By failing at first instance, to permit personal protective facemasks to Plaintiffs and Class members and appropriately implement adequate safeguards to prevent and control the spread of COVID-19 throughout SCI, Defendants willful ignorance damaged Plaintiffs and Class members by exposing them to the deadly coronavirus.

31.  CARNEY was under a duty to prevent his fellow state official from violating the U.S. Constitution and Delaware State Law. CARNEY had opportunities to intervene and prevent Plaintiffs and Class members' rights from being violated, but instead facilitated and supported the violations by DeMATTEIS and MEARS.

32.  Plaintiffs and Class members suffered severe physical injury to their immune system and debilitating symptoms and severe emotional distress as a result of the devastating COVID-19 outbreak at SCI.

33.  As a consequence of this extreme and outrageous conduct – make all the more outrageous and terrifying because it was perpetrated with the imprimatur of Commissioner of Corrections authority and the powers of the state to hire such officers and employees as may be deemed necessary to discharge the functions of the DOC – Plaintiffs and Class members suffered grievously and severely, resulting in SCI to be one of the highest rate of COVID-19 in the nation, according to The Marshall Project, a criminal Justice non-profit.

34.  All the Defendants have acted, and continue to act, under color of state law at all times relevant to this complaint.

35.  During all times relevant to the complaint, Plaintiffs and Class members were under the custody and control of DOC. 11 Del.C. § 6517.

36.  Medical experts agree that 15% of the population that test positive for the deadly coronavirus, will suffered permanent heart damage.


CLAIMS FOR RELIEF

**\*Claim One\***

37.  CARNEY, DeMATTEIS and MEARS was aware that COVID-19 pandemic existed, but acted with deliberate indifference to Plaintiffs and Class members' health and safety, by failing to appropriately implement adequate safeguards to prevent and control the spread of COVID-19 throughout SCI.

38.  At all times relevant hereto, Plaintiffs and Class members had a right clearly established under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment. The Defendants failure to timely adopt CDC Guidance that laid out critical specifications to combat the spread of COVID-19, violated these rights.

39.  CARNEY, DeMATTEIS and MEARS knew or reasonably should have known that COVID-19 is a highly contagious virus, but acted with a callous disregard to Plaintiffs and Class members' health and safety by failing to take appropriate proactive measures thus violating the Eighth Amendment to the United States Constitution.

40.  The actions of CARNEY, DeMATTEIS and MEARS in refusing to provide protective facemask or failure to intervene to permit protective facemasks to Plaintiffs and Class members were done maliciously and willfully and constituted cruel and unusual punishment of the Eighth Amendment to the United States Constitution.


**\*Claim Two\***

41.  DOC is liable pursuant to 42 U.S.C § 1983 for failure to select, train, and supervise their officers and employees to properly quarantine DOC facilities in response to the COVID-19 pandemic in accordance with CDC Guidance.

42.  The need to quarantine the entire correctional system in the best interest of DOC's employees and inmates, to combat the spread of COVID-19, was required by CDC and

other medical experts, due to the unprecedented contagion of this virus and its potentially fatal consequences to dense congregate environments such as institutional facilities.

43.   The failure to properly select, train and supervise DOC officers to appropriately followed CDC and other public health agencies universally guidelines to combat the spread of COVID-19 within institutional facilities was so profound that, one-third of SCI total population (Plaintiffs and Class members) would test positive to COVID-19.

44.   Likewise, DeMATTEIS's failure to intervene reflects that MEARS refusal to permit Plaintiff's and Class members to wear facemasks is not aberrational, but part of a culture and institution which had tolerated such conduct at SCI.

45.   The need for proper selection, training and supervising DOC officials to permit protective facemasks to be worn prior to the SCI COVID-19 outbreak is obvious, as the health and safety of Plaintiffs and Class members was put in grave jeopardy.

46.   DOC's failure to properly select, train and supervise constituted deliberate indifference and caused the constitutional violations and injuries complained of herein.

## VI.   ADMINISTRATIVE PROCEDURES

*WARNING: Prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions. 42 U.S.C. § 1997E (a). Your case may be dismissed if you have not exhausted your administrative remedies.*

Is there a grievance procedure available at your institution?          ☑ Yes          ☐ No

Have you filed a grievance concerning the facts relating to this complaint?   ☑ Yes          ☐No
   If, no, explain why not:

_____

_____

_____

_____

Is there grievance process completed?                                ☑ Yes          ☐ No
   If, no, explain why not:

_____

_____

_____

_____

_____

## VII.   RELIEF

*State briefly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.*

Plaintiffs, individually and on behalf of the Class, prays for judgment as follows:

a) Awarding Plaintiffs and the Class compensatory damages for Four Hundred Million ($400,000,000.$^{00}$) dollars, to be divided equally among the Plaintiffs and Class members.

b) Awarding Plaintiffs and the Class punitive damages for Defendants' willful and intentional violation in the sum of Four Hundred Million ($400,000,000.$^{00}$) dollars to be divided equally among the Plaintiffs and Class members.

c) Issue a mandatory injunction to provide cardiology consultation to each name Plaintiff and Class member

## VIII.   PRISONER'S LITIGATION HISTORY

*The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in forma pauperis in federal court if that prisoner has "on three or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. §1915 (g).*

Have you brought any other lawsuits in state or federal court while a prisoner?    ☐Yes   ☑No

       If yes, how many? _____

Number each different lawsuit below and include the following:

- Name of case (including defendants' names), court, and docket number
- Nature of claim made
- How did it end? (For example, if it was dismissed, appealed, or is still pending, explain below.)

## I.X   PLAINTIFF'S DECLARATION AND WARNING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase that cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending or modifying existing law; and (3) complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

*Plaintiff must sign and date the complaint and provide prison identification number and prison address,*

September 21, 2020
Dated

Plaintiff's Signature

Gibbs, Dion D
Printed Name (Last, First, MI)

S.B.I. #414364
Prison Identification #

| Route 113, P.O. Box 500 | Georgetown | DE | 19947 |
|---|---|---|---|
| Prison Address | City | State | Zip Code |

**Plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.**

I/M: Hasini B. Perkins BLDG. Merit East
**SUSSEX CORRECTIONAL INSTITUTION**
**P.O. BOX 500**
**GEORGETOWN, DELAWARE 19947**
SBI # 00295136



FILED
SEP 28 2020
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

United States District Court
UNIT 18
844 North King Street
Wilmington, Delaware
19801